This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-Cross-Appellee, Gloria Zanko, and Appellees-Cross-Appellants, George and Christine Kapcar, appeal from a judgment of the Summit County Court of Common Pleas that awarded damages on both Zanko's claim and the Kapcar's counterclaim stemming from the sale of real property by the Kapcars to Zanko. We affirm.
On June 26, 2000, Zanko entered into an agreement to purchase a house owned by the Kapcars. On June 27, 2000, Zanko gave the Kapcars a check for $5,000 as earnest money. On July 12, 2000, she paid another $25,000. The sale closed at the end of July and the $450,000 purchase agreement was paid off. Since that time, however, numerous disputes have arisen between the parties, culminating in this lawsuit.
One dispute between the parties is the agreed purchase price. The total purchase price was in excess of $500,000 and, because Zanko did not want to disclose to her soon-to-be-ex-husband that she had spent more than $450,000 for the property, the parties documented their agreement in more than one writing. The dispute centers on how many writings there were. Zanko asserts that there were two; the Kapcars maintain that there were three.[1]
It is Zanko's position that the total purchase price was $508,000, as evidenced by two writings: (1) the purchase agreement for $450,000, and (2) a promissory note for $58,000. The Kapcars asserted that, in addition to the purchase agreement and the promissory note, there was a third writing in which Zanko agreed to pay an additional $25,000 in cash, for a total purchase price of $538,000. After hearing the evidence surrounding this dispute, the trial court accepted Zanko's position.
In addition to disputes over the purchase price, the parties' disputes fall into two main categories: (1) defects in the property, and (2) alleged conversion of fixtures and personal property by both parties.
The defects alleged by Zanko include the great room floor and the furnace and air conditioner unit, both of which Zanko has replaced, and the electrical wiring, which was in need of over $3,000 in repairs. The alleged conversions of property involved claims by Zanko that the Kapcars had removed several fixtures from the property, including window hardware, door knobs, a copper fireplace hood, and a mill stone at the end of the driveway, that the parties had agreed would be left on the property by the Kapcars. The Kapcars alleged that Zanko had converted several items of their personal property by refusing to allow them to return to the property to remove them.
The trial court found that the parties had failed to prove their claims for conversion. The court also found that Zanko had failed to establish her claims for damages relating to the floor or the furnace and air conditioner unit. The trial court did award her damages for the defects in the electrical wiring because the Kapcars had made affirmative misrepresentations that the wiring was up to code and Zanko relied on those representations. The trial court found that the Kapcars owed Zanko $3,475.56 for electrical repairs and that Zanko owed the Kapcars $33,000 on the promissory note. The trial court offset the damages and entered judgment for the Kapcars in the amount of $29,524.44 plus interest. Zanko appeals and the Kapcars cross-appeal, asserting a total of nine assignments and cross-assignments of error. Their challenges have been consolidated and rearranged for ease of discussion.
 Purchase Price Challenges THE KAPCARS'S ASSIGNMENT OF ERROR I "The trial court erred in finding that the parties agreed to a sum of Five Hundred and Eight Thousand Dollars ($508,000.00) when the evidence before the court, by a preponderance of same, indicates that the purchase price was Five Hundred Thirty Eight Thousand Dollars ($538,000.00)."
 ZANKO'S ASSIGNMENT OF ERROR V "The trial court erred in failing to credit Plaintiff with the $5,000.00 payment on the $58,000.00 note payable to the Defendants."
The parties raise challenges to the following findings: (1) that there was no third written agreement between the parties that brought the total purchase price to $538,000, but that the $25,000 paid by Zanko on July 12, 2000 was a payment on the promissory note; and (2) the $5,000 down payment was toward the $425,000 purchase price and not the promissory note.
We will construe the challenges to these factual findings as challenging the weight of the evidence supporting each finding. When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten
(1986), 33 Ohio App.3d 339, 340.
The trial court's finding that there was no third written agreement between the parties that Zanko would pay an additional $25,000 for the house was supported by the weight of the evidence. The Kapcars introduced into evidence a writing that they claimed was a third written agreement. There are no words on the paper, only a series of calculations of dollar figures. Next to several of the figures are written different dates and the initials "CK" and "GZ." The Kapcars contend that they made these calculations with Zanko, demonstrating the understanding of the parties that the total purchase price was $538,000 and that Zanko would pay $25,000 in addition to the $450,000 under the purchase agreement and the $58,000 on the promissory note. The Kapcars testified that the parties agreed that certain payments would be made by the dates indicated.
Zanko testified that she recalled that the parties had written dollar figures on a paper bag, but that they were merely negotiating at that time. She insisted that she did not put her initials on the paper and further testified that it was her understanding that the $25,000 that she paid to the Kapcars was a payment on the promissory note. Zanko's testimony tends to be supported by the document. The figures were clearly photocopied from another paper and then, with different pens, several of the figures were initialed "CK" and "GZ" and dated with different dates.
Given that the evidence as to the nature of this writing was disputed and that the figures on the paper are obviously photocopied from another paper, the trial court did not lose its way in concluding that this writing did not evidence an agreement between the parties. Therefore, the trial court likewise did not lose its way in concluding that the $25,000 paid by Zanko was a payment on the note and not a payment toward a higher purchase price.
There was also disputed evidence as to the nature of the $5,000 down payment made by Zanko. Although Christine Kapcar testified that this payment was made in addition to the $450,000 paid under the purchase agreement, Zanko herself testified that the $5,000 was paid as earnest money on the written purchase agreement. Moreover, the purchase agreement itself includes provisions that explicitly state that the $5,000 earnest money would be "applied against" or "credited against" the $450,000 purchase price. The trial court did not lose its way in concluding that the $5,000 represented a down payment on the $450,000 purchase agreement, not the $58,000 note.
The Kapcars' first assignment of error and Zanko's fifth assignment of error are overruled.
 Common Law Doctrine of Caveat Emptor
The parties raise several assignments of error that pertain to the doctrine of caveat emptor, "let the buyer beware."
 THE KAPCAR'S ASSIGNMENT OF ERROR III "The trial court erred in awarding the sum of $3,475.56 to the Appellant for corrected electrical repairs."
 ZANKO'S ASSIGNMENT OF ERROR I "The trial court erred in failing to find that the Defendants breached the real estate purchase agreement when said Defendants prevented the Plaintiff from having the subject property inspected, and when said Defendants removed certain fixtures from the property."[2]
 ZANKO'S ASSIGNMENT OF ERROR II "The trial court erred in failing to find that the Defendants committed acts of fraudulent concealment and fraudulent misrepresentations as to the condition of the subject property."
 ZANKO'S ASSIGNMENT OF ERROR III "The trial court erred in failing to award Plaintiff damages for the cost of repair of the floor in the great room."
 ZANKO'S ASSIGNMENT OF ERROR IV "The trial court erred in failing to award Plaintiff damages for the cost of the replacement of the heating and air conditioning unit in the main house."
Zanko's claim against the Kapcars sought damages for costs she incurred: (1) replacing the wood floor in her great room, (2) replacing the furnace and air conditioner, and (3) repairing portions of the electrical wiring. The trial court awarded Zanko damages for the electrical repairs but denied her claims for the furnace replacement and electrical repairs. Zanko assigns error to the trial court's denial of some of her damage claims; the Kapcars assign error to the trial court awarding Zanko damages for the electrical repairs.
 "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor."
Layman v. Binns (1988), 35 Ohio St.3d 176, syllabus.
 (1) Defects open to observation — There was ample evidence presented that each of these alleged defects[3] was open to observation or discoverable upon reasonable inspection. Much evidence was provided about the wood floor in the great room. It was covered by large rugs, not wall-to-wall carpeting. Much of the floor surface was exposed to view or could be observed by rolling back the rugs. Zanko did not dispute that she could have rolled back the rugs to observe the floor boards, but she indicated that she did not because she did not "want to be rude." The joists supporting the floor also could have been observed from underneath from the basement crawl space. Although Zanko did not go into the crawl space, there was no evidence that she could not have done so. The experts who did the electrical repairs and the replacement of the furnace and air conditioner each gave testimony that the problems were obvious and would have been revealed by a reasonable inspection.
 (2) Opportunity to inspect — Zanko argues that the Kapcars impeded her right to conduct an inspection, but that claim that is not supported by the evidence before the trial court. Zanko's only evidence of the Kapcars interfering with her ability to inspect the property was that, after she made one appointment for an inspection, the Kapcars cancelled the appointment. Zanko, however, failed to schedule another appointment. During the next few weeks prior to closing, Zanko was at the property several times, yet she never came with an inspector or demanded that the Kapcars allow her to inspect the property. Knowing that she had not had an inspection of the property, Zanko signed the papers to close the deal and paid $475,000 toward the purchase price of the house. There is no evidence in the record that the Kapcars denied her access to the property or otherwise prevented Zanko from inspecting the property. There is just vague testimony that the parties played phone tag and never agreed to another inspection time. Zanko failed to prove that her opportunity to inspect the house was impeded by the Kapcars.
 (3) Fraud by the Kapcars — To sustain a claim for fraudulent misrepresentation, a buyer must establish:
 "a representation * * *, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation * * *, and (6) a resulting injury proximately caused by the reliance."
Cardi v. Gump (1997), 121 Ohio App.3d 16, 22.
The burden was on Zanko to establish fraud by the Kapcars. See Layman,35 Ohio St.3d at 178. A non-disclosure by the seller of a home will not rise to the level of fraud unless the defect was latent (i.e., could not have been detected by inspection). See id. Consequently, because none of the defects was latent, Zanko could escape the application of the doctrine of caveat emptor only by showing fraud by the Kapcars through an affirmative misrepresentation or a misstatement. See id.
Other than general statements that they believed the property would pass a home inspection, Zanko presented no evidence of any affirmative misrepresentations by the Kapcars about either the great room floor or the furnace and air conditioner unit.[4] There was evidence, however, that the Kapcars represented to Zanko that they had completely redone the electrical wiring and that it was up to code. The trial court could reasonably infer from that evidence that the Kapcars intended for Zanko to rely on that representation and that her damages were a result of that reliance. Because there was no evidence that Zanko should have had any reason to question the truth of that representation, she was justified in relying on it, despite the fact that she did not have a professional inspection of the house. See Foust v. Valleybrook Realty Co. (1981),4 Ohio App.3d 164, 165. The trial court also did not lose its way in finding the final element of fraud, that the Kapcar's had knowledge of the falsity of their representation. The Kapcars claimed to have hired a licensed electrician to completely rewire the house. The evidence revealed, however, that a building permit was pulled for installation of a new electrical subpanel, but not for rewiring the house.
Consequently, because Zanko established that the Kapcars committed fraud regarding the state of the electrical wiring in the house, the trial court did not err in awarding Zanko damages for the necessary repairs. The Kapcars third assignment of error is overruled. As to the other damages claimed by Zanko, recovery was properly denied under the doctrine of caveat emptor. Zanko's first, second, third, and fourth assignments of error are overruled.
 Alleged Conversions of Property KAPCAR'S ASSIGNMENT OF ERROR II "The trial court erred in failing to award the Appellees the fair market value of the items of personal property wrongfully converted by the Appellant."
 ZANKO'S ASSIGNMENT OF ERROR VI "The trial court erred in failing to award Plaintiff $12,000.00 for the cost of replacing missing doorknobs, window latches, copper hood and millstone that Defendants took with them therefore breaching the real estate Purchase Agreement."
The Kapcars contend that Zanko converted several items of their property and Zanko contends that the Kapcars removed several fixtures and other items that they had agreed to leave on the property. The trial court found that neither claim of conversion was established by a preponderance of the evidence. We agree.
These claims were tried solely on the testimony of the parties; there were no relevant photographs to support these claims that such items were in fact on the property before Zanko took possession. Although each side presented some evidence about the items that they alleged were wrongfully taken by the other party, their testimony was conflicting. Zanko testified that fixtures were missing when she took possession of the house; the Kapcars testified that many of the fixtures were not there when Zanko bought the house. The fireplace hood, according to the Kapcars, was in the basement when Zanko bought the house and they left it there.
Likewise, the Kapcars testified that they left several items on the property with the understanding that they would be allowed to return to retrieve them. They supplied a list of the items with their estimation of the value of each item. Zanko testified that there was no agreement that the Kapcars would return to remove property, that many of the listed items had not been left by the Kapcars, and that many of the items she thought were trash and she did not know what happened to them. She further testified that she never prevented the Kapcars from retrieving any of their possessions from the property.
It was for the trial judge, as trier of fact, to resolve the conflicts in the testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We cannot say the trial judge lost his way in concluding that neither conversion claim had been proven by a preponderance of the evidence. The Kapcar's first assignment of error and Zanko's sixth assignment of error are overruled.
The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, J., BATCHELDER, J. CONCUR.
[1] Neither party raised the doctrine of merger, that the purchase agreement is merged in the deed and no cause of action exists upon the prior agreement. See, e.g., Mayer v. Sumergrade (1960), 111 Ohio App. 237,239. Because this was an affirmative defense that was waived because it was not raised, we will not address it here. Jim's Steak House, Inc. v.Cleveland (1998), 81 Ohio St.3d 18, 20; See Lane v. Lynn (1981), 3rd Dist. No. 5-80-29; Ralston v. Spoor (1979), 593 P.2d 1285.
[2] The portion of this assigned error that deals with the fixtures allegedly removed by the Kapcars is addressed in the discussion of Zanko's sixth assignment of error.
[3] Although the evidence demonstrates that Zanko did not simply repair but did extensive renovation of this house, for purposes of caveat emptor analysis, we will assume that there were defects with the floor, furnace, and electrical wiring.
[4] Although Zanko makes repeated reference to the Kapcars' statements about a lack of asbestos in the house, those representations are irrelevant because Zanko did not claim any damage due to the presence of asbestos in the house.